# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONNECTIONS ACADEMY<br>OF PENNSYLVANIA, LLC,<br><br>            Plaintiff,<br><br>v.<br><br>COMMONWEALTH CHARTER ACADAMY<br>CHARTER SCHOOL, f/k/a COMMONWEALTH<br>CONNECTIONS ACADEMY<br>CHARTER SCHOOL,<br><br>            Defendant. | CIVIL ACTION NO. |

## VERIFIED COMPLAINT

Plaintiff, Connections Academy of Pennsylvania, LLC ("Connections" or "Plaintiff"), through its undersigned counsel, for its Complaint against Commonwealth Charter Academy Charter School (f/k/a Commonwealth Connections Academy Charter School) ("Charter School" or "Defendant" and, together with Connections, the "Parties"), avers as follows:

I. **NATURE OF ACTION**

1. Connections demands payments pursuant to an Educational Products and Services Agreement, and subsequent Amendments thereto (the "Amended 2011 Agreement"), for services rendered by Connections for Charter School. From 2003 through the termination of the Amended 2011 Agreement in 2016, Connections performed extensive services relating to the maintenance and operation of the Charter School, a privately-operated public school providing educational services to K through 12 students through an online-based curriculum. Those services included, but were not limited to, crafting and administering a plan for publicizing

Charter School's offerings to potential students and parents ("Marketing Services") and the implementation and administration of that plan ("Outreach Services").

2. In support of the 2015-16 Academic Year, Plaintiff delivered the Marketing and Outreach Services is was contracted to provide and Defendant received the benefit of those services.

3. However, Defendant refuses to pay for services provided. The total amount unpaid, without interest, is $1,327,786.

II. **JURISDICTION AND VENUE**

4. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this matter involves an amount in controversy that exceeds $75,000 and there is complete diversity of citizenship between the Parties. For jurisdictional purposes, the citizenship of a limited liability company is determined by the citizenship of its members. As set forth below, Connections is a sole member LLC whose single member is Connections Education, LLC, a limited liability company formed under the laws of the state of Delaware and whose principal place of business is located in Columbia, Maryland. Connections Education, LLC, in turn, is a single member limited liability company whose sole member is Connections Education, Inc., a corporation formed under the laws of Delaware with its principal place of business in Columbia, Maryland. Thus, for jurisdictional purposes, Connections is a citizen of the states of Delaware and Maryland. The Charter School is a non-profit, non-stock corporation incorporated and with its principal place of business in the Commonwealth of Pennsylvania.

5. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the subject claim occurred in this District.

III.  **THE PARTIES**

6. Connections is a limited liability company formed under the laws of the Commonwealth of Pennsylvania. Connections provides educational support and services to online-based K through 12 education providers in the Commonwealth of Pennsylvania.

7. The Charter School is a non-profit non-stock corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal address of 1 Innovation Way, Harrisburg, Pennsylvania 17110. The Charter School is a public school providing educational services to K through 12 students throughout the Commonwealth of Pennsylvania through an online-based cyber education program.

IV.  **FACTUAL BACKGROUND**

   A.  **The Parties' Established Course of Conduct**

8. The Charter School was formed as Commonwealth Connections Academy Charter School in 2002 as a Pennsylvania non-profit non-stock corporation intended to operate as an online-based public school serving students in grades K through 12 located anywhere in the Commonwealth of Pennsylvania.

9. The Charter School's inaugural year of operation was 2003 when it began offering online-based educational services for the 2003-04 Academic Year[1] commencing on July 1, 2003. Connections had supported the Charter School throughout the application process with the Pennsylvania Department of Education at no charge to the Charter School with the understanding the Charter School would carry the "Connections Academy" name and offer the Connections Academy Education Program, as well as use Connections as its service provider for

---

[1] An "Academic Year" runs from July 1 to June 30 of the following year.

a number of services critical to the successful delivery of the education program, including marketing, outreach, enrollment and placement.

10. Connections and the Charter School entered into their initial education management agreement on January 6, 2003 for a five-year term. The Charter School's inaugural Academic Year was the 2003-2004 Academic Year.

11. The only meaningful source of revenue flowing to the Charter School was the per pupil funding generated through student enrollments in the Charter School. The first distribution of that funding would not occur until late Fall 2003, three months after the 2003-04 Academic Year commenced and four months after the Charter was issued[2], so the Charter School was dependent on Connections to support all the necessary and appropriate start-up activities that needed to commence immediately upon issuance of the Charter School's charter to operate a state-wide online-based public charter school. One of those critical activities included getting the message out to interested families throughout the Commonwealth of the education opportunity being offered by the Charter School, the planning and preparation for which began prior to the charter's issuance so that implementation could commence immediately upon issuance of the school's charter.

12. In order to support the Charter School during this period of time when significant outlays of resources were required, but no funding was available to cover the significant cost of the myriad of activities that go into supporting the operations of the Charter School, Connections would perform services and activities on behalf of Charter school, but would not invoice the Charter School until months later, when the Academic Year that those activities supported commenced.

---

[2] The Charter School received its charter on May 30, 2003.

13. In order to ensure the Charter School had sufficient flow of funds available to it throughout the Academic Year, rather than invoice the Charter School for those off-Academic Year activities performed in the initial invoice submitted after the academic Year commenced (typically in September), Connections spread out that cost over the Academic Year, invoicing the Charter School in monthly installments. Hence, even though activities including, but not limited to, marketing and outreach, enrollment, technology distribution to students, financial planning, staff hiring and onboarding, were largely completed by the commencement of the Academic Year, the Charter School would not fully compensate Connections for the delivery and underwriting of those activities until payment of the final Academic Year invoice issued by Connections in June of that Academic Year. The Charter School, for its part, consistently paid the invoices submitted to it in a timely manner, never disputing, questioning or requesting a modification of the timing of the service delivery and invoicing that the Parties established in the first year of the Charter School's formation and continued without modification through the duration of the relationship.

14. Over the years, the Parties amended and modified their contractual arrangement. On February 23, 2011, the Parties entered into a Restatement and Assignment of Educational Products and Services Agreement between Commonwealth Connections Academy Charter School, Connections Academy, LLC and Connections Academy of Pennsylvania, LLC (the "2011 Agreement"). (*See* the 2011 Agreement, attached as Exhibit A hereto).

15. As in past years, Connections was responsible for two discreet categories of services related to the development and administration of the Charter School's student recruitment efforts.

16. First, Connections was responsible for attracting students through the creation and administration of the Charter School's awareness and recruitment campaign designed to provide information about the opportunities offered by the Charter School to parents and students, ("Marketing Services").

17. Second, Connections was responsible for the implementation of that plan through, *inter alia*, multi-media marketing, community presentations and information sessions and web-based marketing ("Outreach Services").

18. As in past years, the planning and preparation for implementation of those services began as early as November 2014, and the implementation of the delivery of these services commenced on or about the January of the preceding academic year (January 2015 for the 2015-16 Academic Year). These activities required the dedication of Connections' human resources and the outlay of Connections' funds in support of that effort, several months before the Charter School received its first distribution of per-pupil funding.

19. Compensation for services rendered under the Amended 2011 Agreement were calculated according to a Fee Schedule appended to the Amended 2011 Agreement, for which Connections was required to invoice the Charter School monthly. (*See* Ex. A (Amended 2011 Agreement § 9.1(a), (c))).

20. For Marketing Services, the Charter School was required to remit each month of the Academic Year a percentage of revenue recognized from all funding sources by the Charter School. This compensation to Connections meant that Connections' revenues were partially contingent on the success of its marketing efforts at attracting students to the Charter School—a condition insisted upon by Charter School.

21.     For Outreach Services, the Charter School was required to remit a *pro rata* portion of a flat annual fee set forth in the applicable fee schedule.

22.     Despite the periodic amendments to the operative agreement, the pattern of frontloading the delivery and underwriting of services by Connections but invoicing in monthly installments over the Academic Year established in 2003 remained the established course of conduct throughout the Parties' relationship spanning thirteen (13) Academic Years.  The Parties never deviated from the invoicing and payment practice established by the Parties until the closing months of the final Academic Year (2015-16) of the operative Agreement.

B.     **The Charter School Alters the Relationship.**

23.     In 2015, the Parties entered into discussions regarding the Charter School's intention to transition away from its relationship with Connections as a Connections Academy school to an independently managed charter school that would result in the Parties' relationship being scaled down to that of Connections becoming only a courseware and platform provider for the 2016-17 Academic Year.  All other services, including Marketing Services, Outreach Services and Enrollment and Placement Services, each category historically provided to the Charter School by Connections in support of an upcoming Academic Year would transition to the Charter School.  Connections, however, would continue to provide those services in support of the Charter School's 2015-16 Academic Year through the end of the Amended 2011 Agreement on June 30, 2016, and provide transition services that extended beyond the Amended 2011 Agreement Term.

24.     Those discussions resulted in the Parties entering into the Education Products and Services Agreement on February 25, 2015 (the "2015 Agreement") (*See* 2015 Agreement attached hereto as Exhibit B).

7

25. The 2015 Agreement provided for a two year term that would "commence on July 1, 2016, and shall expire on June 30, 2018." (Ex. B (2015 Agreement § 8)). As discussed and agreed-to by the Parties, Connections transitioned responsibility for the delivery of both Outreach Services and Marketing Services in support of the recruitment of students for enrollment for the 2016-17 Academic Year to the Charter School.

C. **Connections Continues To Provide Marketing Services for 2015-16 Academic Year Under the 2011 Agreement**

26. The Amended 2011 Agreement remained in operation and effect for the 2015-16 Academic Year.

27. On March 1, 2015, the Parties entered into Amendment 6 to the Amended 2011 Agreement. (See Amendment 6, attached hereto as Exhibit C).

28. The purpose of Amendment 6 was to begin the process of transitioning services from Connections to the Charter School, in order to smoothly complete such transition by the time the 2015 Agreement took effect on July 1, 2016.

29. While Amendment 6 does not provide any modification to Connections' responsibility to provide Marketing and Outreach Services in support of recruiting students for enrollment for the 2015-16 Academic Year, it did provide a revised Fee Schedule applicable to all services Connections would continue to provide the Charter School for the 2015-16 Academic Year, including Marketing and Outreach Services.

30. With respect to Marketing Services, the 2015-16 Fee Schedule requires the Charter School to compensate Connections for its Marketing Services "1.2% of all revenue from governmental sources." (See 2015-16 Fee Schedule attached hereto as Exhibit D). Thus, for each month of the 2015-16 Academic Year, the Charter School is required to make payments to

Connections in the amount of "1.2% of all revenue from governmental sources" for Marketing Services.

31. With respect to Community Outreach Services, the Fee Schedule established a fee of $1,500,000. (See Ex. E (2015-16 Fee Schedule)). Thus, for each month of the 2015-16 Academic Year, the Charter School is required to make payments to Connections in the amount of $125,000.00 for Community Outreach Services.

D. **The School Has Refused to Pay for Marketing Services Rendered For The 2015-16 Academic Year**

32. Pursuant to the Amended 2011 Agreement, as amended, Connections continued providing Marketing and Outreach Services to the Charter School in support of recruitment of students for enrollment for the 2015-16 Academic Year.

33. In Spring 2014, the Parties developed a budget for the Charter School for the 2015-16 Academic Year based on the Charter School's enrollment projections and its identified priorities. That budget called for the Charter School to pay to Connections $2,753,705 for the marketing and related services it was providing to the Charter School in support of the Charter School's enrollment campaign. The compensation owed to Connections in this area was broken into two categories: (1) $1,253,705 for its Marketing Services (charged as a percentage of realized revenue from all sources); and (2) $1,500,000 for its Outreach Services (fixed fee).

34. In keeping with the parties' historic practice (and as more fully alleged above) planning for the services supporting both fees began in November 2014 and implementation of that plan commenced in January 2015. In keeping with the Parties' established course of dealing, Connections began invoicing the Charter School for the Marketing Services and Outreach Services in July 2015 (July, August and September Invoices being delivered to the charter School board in September for consideration at its October board

meeting) with the intention of invoicing the Charter School for the fees owed it in twelve (12) monthly installments, which would be reflected on each month's invoice.  Also in keeping with the established course of conduct of the Parties, the Charter School paid each invoice submitted to it by Connections in a timely fashion, raising no questions about the installment schedule reflected therein.

35.     The Board approved Connections' 2015-16 Marketing Outreach Plan at its March 2015 Board meeting.

36.     Subsequently, Connections worked diligently to implement the balance of its 2015-16 Marketing Outreach Plan (some activities had already started in January), committing significant time and resources to its efforts to attract new students for the Charter School and retain its existing student population.  They included, but were not limited to, numerous media buys, online and web-based marketing, social media campaigns, developing and circulating print advertising, holding information sessions, and staffing its call center to make and field calls related to the Charter School and enrollment.

37.     As a result of Connections' work, by July 1, 2015, the start of the 2015-16 Academic Year, the School had 7,888 students for the Charter School.  On September 11, 2015, the enrollment had grown to 8,708 students and, by October 1, 2015, the Charter School had an enrollment of 9,036 students.

38.     Over the course of the 2015-16 Academic Year, the Charter School's average enrollment was 9,464 students.  The enrollment target established by the Board in the budget it adopted for the 2015-16 Academic Year was 9,500.

39.     Although the bulk of its efforts to recruit students for the 2015-16 Academic Year began to wind down in December 2015 and January 2016, Connections' Marketing and Outreach

efforts continued into 2016 through, among other ways, its maintenance of the Charter School digital media presence in support of the Charter School's continued open-enrollment. For example, after Connections deactivated the Charter School website it maintained in February 2016, based on the Charter School's direction that the School would be standing up its new website during that time, the Charter School directed Connections to immediately rebuild and reactivate the website and maintain it through June 2016, the end of the 2015-16 Academic Year. The rebuild was done at no additional cost to the Charter School.

40. Consistent with past practice, Connections did not begin billing the Charter School for its monthly amounts due for services provided in connection with the 2015-16 Academic Year, including all Marketing and Outreach efforts, until October 2015.

41. Between October 9, 2015 and August 26, 2016, Connections invoiced the Charter School for services rendered in support of the 2015-16 Academic Year as follows:

| Invoice Date | Corresponding Month |
|---|---|
| 10/9/15 | July 2015 |
| 10/9/15 | August 2015 |
| 10/28/15 | September 2015 |
| 11/19/15 | October 2015 |
| 1/12/16 | November 2015 |
| 1/22/16 | December 2015 |
| 2/25/16 | January 2016 |
| 6/6/16 | February 2016 |
| 6/6/16 | March 2016 |
| 6/6/16 | April 2016 |
| 7/20/16 | May 2016 |
| 8/26/16 | June 2016 |

42. From October 2015 through January 2016, the Charter School paid all invoices submitted in full.

43. In February 2016, following the Parties' established course of conduct, Connections prepared its invoice to the Charter School to be submitted to the Charter School's

11

Board of Trustees for approval in March.  Without explanation, the Charter School paid all line items covered by the invoice except for the Marketing Services and Outreach Services fees.  This practice continued through the end of the Agreement term resulting in an accumulated combined outstanding balance owed to Connections for Marketing Services and Outreach Services in the amount of $1,327,786.  This outstanding balance represents five (5) installments of the installment payment plan the Charter School committed to when it contracted with Connections to provide the Marketing Services and Outreach Services to the Charter School.

44. The Amended 2011 Agreement contains procedures to address billing disputes.  According to the amended 2011 Agreement, in the event it disputes any invoiced charge, "[t]he Charter School shall notify [Connections] of the basis for any dispute within five (5) days of the review of the invoice at a Charter School Board meeting and shall work to resolve the dispute within thirty (30) days.  All amounts other than any amount in dispute shall be paid according to the terms herein."  (See Ex. A (Amended 2011 Agreement § 9.1(c))).

45. The Charter School failed to provide timely notice as required.

46. Indeed, the Charter School never provided an explanation for its refusal to compensate Connections for the Marketing Services and Outreach Services it provided in support of the 2015-16 Academic Year.

47. To date, the Charter School is in arrears $702,786.36 for Marketing Services.

48. To date, the Charter School is in arrears $625,000.00 for Community Outreach Services.

## COUNT I – Breach of Contract
## Breach of the 2011 Agreement, As Amended

49. Connections incorporates by reference the preceding paragraphs as if fully set forth herein.

50.     The Charter School is party to the Amended 2011 Agreement, as amended, which is a valid and enforceable contract.

51.     Under the Amended 2011 Agreement, the Charter School is required to remit payment for services provided by Connections, *inter alia*, for services rendered in support of the 2015-16 Academic Year.

52.     Under the Amended 2011 Agreement, such services include Marketing and Outreach Services.

53.     The Charter School has breached the Amended 2011 Agreement, as amended by refusing to make full and timely payments for all services rendered thereunder by Connections. Specifically, the Charter School has refused to make full and timely payments from February through June 2016 for Marketing and Outreach Services performed by Connections on its behalf in support of the recruitment of students for enrollment for the 2015-16 Academic Year.

54.     The Charter School has further breached the Amended 2011 Agreement by failing to provide Connections with any notice of the basis for its refusal to make full and timely payments for the Marketing and Outreach Services provided by Connections in support of the 2015-16 Academic Year.

55.     As a result of the Charter School's breaches of the Amended 2011 Agreement, Connections has suffered damages.

56.     Connections is entitled to judgment against the Charter School and an award of damages in the amount of $1,327,786.36, together with interest, costs and such other and further relief as the Court deems appropriate.

**COUNT II – Unjust Enrichment**

57. Connections incorporates by reference the preceding paragraphs as if fully set forth herein.

58. Alternatively, the Charter School has been and will continue to be unjustly enriched by the fact that it has reaped the benefits of Connections' significant, extensive and successful Marketing and Outreach Services in the form of increased enrollment and funding and other compensation related to enrollment.  These benefits extend beyond a given Academic Year as, due to Connections' efforts, the Charter School retains the vast majority of enrolled students, allowing the Charter School to capitalize over the course of multiple years on Connections' services provided in a given year.

59. In support of the 2015-16 Academic Year, Connections conferred substantial benefits upon the Charter School in the form of its Marketing and Outreach efforts on its behalf.

60. As set forth above, the Charter School encouraged, approved and accepted such benefits without compensating Connections for its efforts.

61. In addition, the Charter School reaped the benefits of Connections' Educational and Instructional Services through June 30, 2018, capitalizing on Connections' efforts to provide its enrolled students with, inter alia, instructional and course materials and access to educators.

62. It would be unjust and inequitable to allow the Charter School to accept and retain the aforementioned benefits without compensating Connections.  Connections' efforts in providing Marketing and Outreach Services in support of the recruitment of students for the enrollment for the 2015-16 Academic Year directly and indirectly led and contributed to the Charter School's student enrollment for the 2015-16 Academic Year and retention of and compensation for such students over subsequent Academic Years.  Moreover, Connections'

efforts in providing Educational and Instructional Services directly benefitted the Charter School and its enrolled student populations.

63. Consequently, judgment should be entered in favor of Connections and against the Charter School, and the Charter School should be ordered to pay Connections restitution calculated to compensate Connections for services provided, together with interest, costs and such other and further relief as the Court deems appropriate.

## **REQUEST FOR RELIEF**

WHEREFORE, Connections requests judgment against the Charter School on the Complaint and award to Connections its damages or restitution, including but not limited to the $1,327,786.36, together with interest, costs and such other and further relief as the Court deems appropriate.

*/s/ Timothy D. Katsiff*
Timothy D. Katsiff, Esquire (PA I.D. No. 75490)
katsifft@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599

*Attorney for Plaintiff Connections Academy of Pennsylvania, LLC.*

Date:   April 8, 2020

OF COUNSEL:
Matthew A. White, Esquire (PA I.D. No. 55812)
Terrence M. Grugan, Esquire (PA I.D. No. 307211)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599